# CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, Petitioner-Appellant,

v.

# Wisconsin DEPARTMENT OF REVENUE, Respondent.†

Court of Appeals

*No. 89-1720. Orally argued April 26, 1990.—Decided June 14, 1990.*

(Also reported in 458 N.W.2d 550.)

†Petition to review granted.

For the petitioner-appellant the cause was orally argued by *John H. Lederer* and submitted on the briefs of *John Duncan Varda* and *John H. Lederer* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison.

For the respondent the cause was orally argued by *Alan M. Lee,* assistant attorney general, and submitted on the brief of *Donald J. Hanaway,* attorney general, and *Burneatta L. Bridge,* assistant attorney general, of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   Consolidated Freightways Corporation appeals from an order affirming a decision of the Wisconsin Tax Appeals Commission. The Department of Revenue assessed additional franchise taxes against Consolidated for the years 1974–77. The commission affirmed the department's decision denying Consolidated's petition for a redetermination of the assessment, and the circuit court affirmed.

Consolidated challenges the formula used by the department to determine the portion of its income subject to Wisconsin tax in the years in question. The company does not challenge, nor do we decide, the overall validity of the apportionment formula or the department's rule adopting it. Consolidated's claim is that the formula—as applied to its business activities during the tax years in question—violates: (1) sec. 71.07(2), Stats.,[1] which limits the state's taxing power to income "derived from business transacted . . . within the state"; and (2) the commerce clause of the United States Constitution.

We conclude that the apportionment formula, as applied to Consolidated's activities in the years at issue, violates the mandate of sec. 71.07(2), Stats. Because we so hold, we need not consider the constitutional arguments. We reverse the order.

The facts are not in serious dispute. Consolidated is a "general commodity" common carrier, and its business is nationwide. It is a Delaware corporation and its main offices are in California. As a general commodity carrier, Consolidated serves small and large shippers around the country, transporting manufactured and consumer goods.

---

[1] All references to sec. 71.07 in this decision are to sec. 71.07, Stats. (1985–86).

Because Consolidated is primarily a hauler of small shipments—usually of less-than-truckload size—it normally consolidates several small shipments for over-the-road movement, utilizing a network of established routes and terminals across the country. Consolidated picks up freight from a shipper's dock, moves it to a satellite terminal, where it is combined with other freight from other shippers. It then moves the combined load to a large regional terminal, called a "consolidation center," where the load is consolidated with freight from other satellite terminals bound in the same direction.

Consolidated maintains 410 terminals nationwide and a fleet of 14,000 trailers and 2,400 tractors. It has twelve satellite terminals and a regional consolidation center in Wisconsin.

In 1966, the department adopted Wis. Adm. Code, sec. Tax 2.47, which contains a formula for apportioning the taxable Wisconsin income of a national unitary business. It is a two-factor formula which adds (a) the ratio of gross receipts from carriage of goods first acquired in Wisconsin—the "originating" or "outbound" revenues—to gross receipts from carriage of property everywhere, and (b) the ratio of ton miles of carriage to, from and in Wisconsin to ton miles of carriage everywhere, and then (c) divides the total by two to average the results. The final figure is the percentage of the company's income subject to the Wisconsin franchise tax.

During the years in question, Consolidated continued to apportion its income, as it had in the past, using a different formula. After a field audit in which the department applied the Wis. Adm. Code, sec. Tax 2.47 formula to Consolidated's income, it issued an assessment of additional franchise tax and interest totaling $115,002.98 for the four-year period. The department denied Consolidated's request for a redetermination and

the Tax Appeals Commission affirmed the assessment, concluding that the formula "was not contrary to law and did not result in the taxation of extraterritorial values . . . [or] distort that portion of [Consolidated's] income properly taxable to Wisconsin." As indicated, Consolidated sought judicial review and the circuit court affirmed the commission.

On appeal, Consolidated's primary complaint is that because of the nature of its business—moving long-haul freight and earning income on a given shipment from the entire multistate journey—the department's apportionment formula, with its emphasis on "outbound" shipments, apportions more income to Wisconsin than is permitted by sec. 71.07(2), Stats.

In cases such as this, we review the commission's reasoning, not the circuit court's. *Stafford Trucking, Inc. v. ILHR Dept.*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). The department argues that it should be a deferential review—that because of its expertise in the area of taxation we should defer to the commission's legal conclusions and its interpretation and application of tax statutes if they are reasonable—even though we may disagree with them. *Nigbor v. DILHR*, 120 Wis. 2d 375, 384, 355 N.W.2d 532, 537 (1984).

In a recent case, however, the Wisconsin Supreme Court rejected our use of the "sustain-if-reasonable" standard in the absence of evidence that the agency's interpretation or application of a particular law "is long continued, substantially uniform and without challenge by governmental authorities and courts." *Local No. 695 v. LIRC*, 154 Wis. 2d 75, 83, 452 N.W.2d 368, 372 (1990), quoting *Beloit Education Ass'n. v. WERC*, 73 Wis. 2d 43, 67–68, 242 N.W.2d 231, 242–43 (1976). In *Local 695*, the court, emphasizing the " 'black-letter rule . . . that a

court is not bound by an agency's conclusions of law,' " stated that where there is no evidence that the agency has had experience in interpreting the applicable law "as measured against" the facts of the case—where "there is no evidence of any special expertise or experience" in the particular area— "the weight to be afforded an agency interpretation is no weight at all." *Id.*, 154 Wis. 2d at 82–84, 452 N.W.2d at 371–72 (citation omitted).

In this case, the commission's primary conclusion of law—that the department's use of the formula did not result in the taxation of extraterritorial income in violation of sec. 71.07(2), Stats.—appears to have been drawn solely from the commission's interpretation of supreme court cases, for it is unexplained, other than by the unamplified citation to case authority, notably *W.R. Arthur & Co. v. Department of Taxation,* 18 Wis. 2d 225, 118 N.W.2d 168 (1962), a case also heavily relied on by the department on this appeal.

The purely legal nature of the conclusion is also borne out by the hearing transcript. The department's primary witness on the point, the head of its field audit section, explained that the outbound revenues portion of the formula was designed to measure the carrier's "terminal activities" in Wisconsin. And, when asked whether those revenues are an accurate measure of Wisconsin terminal activity, responded: "It is a measure which had been approved as not being grossly inequitable by the Supreme Court in the W.R. Arthur . . . case . . .."

Thus, both the department and the commission appear to have grounded their decisions in this case not on any particular expertise, but rather on their own interpretation of a supreme court opinion. In addition, as in *Local 695,* there is no evidence in this case that the

agencies' decisions were the result of an "administrative practice [that] is long continued, substantially uniform and without challenge by governmental authorities and courts" or a "uniform [statutory] interpretation over a period of time." *Local 695,* 154 Wis. 2d at 83–84, 452 N.W.2d at 372. As a result, we owe no deference to their legal conclusions in this case.

As we have noted, sec. 71.07(2), Stats., limits the state's taxing power over multistate businesses to "only . . . such income as is derived from business transacted . . . within the state." Consolidated has no argument with the portion of the formula implementing a ratio of Wisconsin ton miles to national ton miles. Its quarrel is with the formula's use of outbound or originating revenues in the first factor, and it argues that the practice violates sec. 71.07 because it reaches income earned by the company in other states. In summary, Consolidated's argument is this:

> Originating revenues do not measure Wisconsin activity. The [outbound revenue] factor measures activity in other states. Because the income for a shipment is earned not merely by activities in Wisconsin but by activities in other states this formula factor attributes to Wisconsin [Consolidated's] activity in other states. The whole journey is attributed to Wisconsin. In fact, under this factor, the longer the journey, the greater the apportionment to Wisconsin—even while the Wisconsin activity is becoming a smaller and smaller part of the whole.

The department counters with a reference to *Arthur,* the primary authority for the commission's decision, and a United States Supreme Court case the department claims upheld its use of outbound revenues in apportioning the income of multistate trucking

71

companies.[2]

The tax apportionment formula devised and applied by the department in *Arthur,* in addition to considering revenue miles and payroll, also relied on the carrier's "originating revenue." The carrier, Arthur, while engaged in a multistate trucking business, had most of its terminal and other facilities in Wisconsin, and it hauled for only one client, a Wisconsin automobile manufacturer. Thus, *all* Arthur's carriage was outbound; its sole activity was transporting automobiles from Janesville to dealers in eleven states.

The department assessed additional income taxes to Arthur based on the three-part formula and Arthur objected to the use of originating revenues in the equation, claiming that the resulting apportionment "taxed services performed . . . outside of Wisconsin" in violation of a tax statute nearly identical to sec. 71.07(2), Stats. The Board of Tax Appeals affirmed the assessment, but the circuit court reversed, substituting a "tangible-property" factor in place of originating revenues.

The supreme court reversed, holding that, even though the originating revenue element of the formula

---

[2]That case, *Moorman Mfg. Co. v. Bair,* 437 U.S. 267 (1978), is cited for two propositions: (1) that a formula-produced assessment will only be overturned where the taxpayer proves that the income attributed to the taxing state is "out of all appropriate proportion" to the business transacted in the state or has led to "a grossly distorted result," *Moorman* at 274; and (2) that, even where the formula would "occasionally over-reflect or under-reflect income attributable to the taxing State," the Supreme Court will not "impose *strict constitutional restraints* on the State's selection of a particular formula." *Id.* at 273 (emphasis added).

Whatever impact *Moorman* might have on a federal constitutional issue, we do not believe it controls our interpretation of a state statute prohibiting extraterritorial taxation.

used 100 percent of Arthur's gross revenues, it did not arbitrarily or improperly tax income from business transacted outside the state. Specifically, the court held:

> We . . . conclu[de] that the originating-revenue or gross-receipts factor is not an arbitrary one, nor does it taint the ultimate [three-factor] formula adopted by the [department]. *As applied to this particular taxpayer,* the inclusion of 100 percent of gross receipts as one factor in a three-factor formula constitutes a reasonable means of reflecting [Arthur's] income attributable to business done in Wisconsin. *The formula also takes into consideration the peculiar nature of [Arthur's] business activity;* it also takes into consideration the fact that [Arthur's] one and only customer is in Wisconsin and that [it] is headquartered in this state. *Arthur,* 18 Wis. 2d at 231, 118 N.W.2d at 171 (emphasis added).

Thus, the court, in ruling as it did, recognized that it was dealing with a taxpayer with very "peculiar" attributes: It had only one customer; 100 percent of its revenues were worked into the formula; and all of its management staff, employees and offices were located in Wisconsin.

In this case, Wisconsin is but one of fifty states in which Consolidated does business. Unlike the carrier in *Arthur,* it is not headquartered in Wisconsin, but in California; and whereas almost all of Arthur's terminals were located in Wisconsin, only thirteen of Consolidated's 410 terminals are located here.

In *Arthur,* the originating revenue factor lumped together in one location (Wisconsin) the company's sales, management, terminal, over-the-road and pick up and delivery activity. But, as we have noted, all of its sales were in Wisconsin, as were its management and all of its offices. Because there was no inbound freight, the

company's only activity in other states was over-the-road mileage and delivery—and the extraterritoriality of these factors was reflected by the mileage and payroll components of the formula used by the department in that case—both of which attributed part of these activities to the other states in which its trucks moved. Given these distinguishing factors, we conclude that *Arthur* is not controlling here.

■

The burden is on the taxpayer to show that an apportionment formula imposes an unreasonable or inequitable tax. *Interstate Finance Corp. v. Dept. of Taxation,* 28 Wis. 2d 262, 273, 137 N.W.2d 38, 43 (1965). And where an interstate taxpayer challenges a formula as taxing extraterritorial values, the showing must be by " 'clear and cogent evidence.' " *Arthur,* 18 Wis. 2d at 232, 118 N.W.2d at 171, quoting *Butler Brothers v. McColgan,* 315 U.S. 501, 507 (1942). We believe such a showing was made in this case.

Use of the outbound revenue factor exaggerates Consolidated's Wisconsin income, for it assumes that outbound and inbound revenues are equal indicators of activity within the state. At the hearing, Consolidated established that long haul carriers are more heavily laden going out of Wisconsin than coming in, and that freight revenues are higher outbound; and the commission so found. There was evidence that Consolidated's outbound revenues in Wisconsin in the years in question were substantially in excess of its inbound revenues.[3]

---

[3]The actual revenues for the years in question were:

|      | Outbound      | Inbound      |
|------|---------------|--------------|
| 1974 | $21,408,902   | $14,885,234  |
| 1975 | 19,189,700    | 12,444,310   |

In addition, because the originating revenue factor attributes the entire journey to Wisconsin, it measures Wisconsin income by activity in other states. Thus, as one of Consolidated's witnesses stated, as the company's activities became increasingly extraterritorial to Wisconsin, use of the outbound revenue factor would increase its tax liability because it attributes this increased activity in other states to Wisconsin. Indeed, the department's own witness agreed that it is inconsistent with the objectives of fair apportionment to have Wisconsin tax liability increase while Wisconsin activity stays the same or lessens.

Another witness for Consolidated testified that there was "not merely a lack of a sensible relationship between activities taxed in Wisconsin and economic activity occurring in the state," but that the Wisconsin formula "actually results in taxation of income produced by activity occurring outside the state." Still another stated that, taking as a given the testimony of the department's witness that the "originating revenue" portion of the formula was intended to reflect Consolidated's activities at its Wisconsin terminals, it actually distorted the revenues normally attributed to those activities by something over 800 percent in a test year. Stated another way, the witness testified that "89.02 percent . . . of Wisconsin outbound revenues . . . required to be reported under . . . Tax 2.47 . . . were, in fact, attributable to activities outside Wisconsin."

As we have noted, sec. 71.07(2), Stats., mandates that foreign companies can be taxed only on income from business transacted within Wisconsin. Considering the identical language in an earlier statute, the supreme court stated:

| 1976 | 25,952,055 | 17,838,478 |
| 1977 | 29,931,347 | 19,347,377 |

75

In prescribing . . . methods of allocating income of persons doing business within and without the state, it is apparent that it was the legislative intent that the method . . . should be so applied as to subject the income earned within the state to taxation *and no more* . . ..

. . ..

[T]he declared legislative purpose is to make *a reasonable and equitable distribution of the taxpayer's income,* to the end that that part of the income *justly assessable in the state of Wisconsin* may be ascertained. The statute does not enjoin upon the commission the use of that method which will produce the largest amount of taxable income, but rather that method which will *most justly apportion the income properly taxable in Wisconsin. Standard Oil Co. v. Wisconsin Tax Comm.,* 197 Wis. 630, 634, 638, 223 N.W. 85, 87–88 (1929) (emphasis added).

We conclude, then, that the commission erred in ruling that the supreme court, in *Arthur,* sanctioned the use of the outbound revenue formula for interstate motor carriers in all circumstances. We also conclude that, in this case, use of the formula unfairly and unjustly apportioned Consolidated's income in those years in violation of the statutory prohibition against taxing extraterritorial income.

*By the Court.*—Order reversed and cause remanded with directions to the circuit court to enter judgment reversing the decision of the tax appeals commission.