CONSOLIDATED FREIGHTWAYS CORPORA-
TION OF DELAWARE, Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF REVENUE,
Respondent-Petitioner,

Supreme Court

*No. 89-1720. Oral argument September 4, 1991.—Decided
November 14, 1991.*

(Also reported in 477 N.W.2d 44.)

765

766

For the respondent-petitioner the cause was argued by *Alan Lee,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* past attorney general and *James E. Doyle, Jr.,* present attorney general.

For the petitioner-appellant there was a brief by *John Duncan Varda, John H. Lederer* and *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* Madison and oral argument by *Mr. Varda.*

DAY, J. This case is before us on a petition for review by the Wisconsin Department of Revenue of a published decision of the court of appeals.[1] The Department of Revenue assessed a tax against Consolidated Freightways, an interstate motor carrier, using the formula provided in Wis. Admin. Code sec. Tax 2.47 to ascertain the amount of income Consolidated Freightways earned in Wisconsin. The Tax Appeals Commission upheld the tax assessment. The Dane County Cir-

---

[1] *Consolidated Freightways Corp. v. DOR,* 157 Wis. 2d 65, 458 N.W.2d 550 (Ct. App. 1990).

cuit Court upheld the tax assessment. The court of appeals reversed the circuit court. We reverse the court of appeals.

There are three issues in this case: (1) as applied to Consolidated Freightways, does the formula violate sec. 71.07(2)(e), Stats., 1985-86, which limits the taxable income to income derived from business transacted within this state; (2) as applied to Consolidated Freightways, does the formula violate the Commerce Clause of the United States Constitution; and (3) as applied to Consolidated Freightways, does the formula violate the Due Process Clause of the United States Constitution?

We hold that the formula provided in Wis. Admin. Code sec. Tax 2.47 (1989), as applied to Consolidated Freightways, taxes only income "derived from business transacted . . . within the state," and does not violate sec. 71.07(2)(e), Stats., the Commerce Clause, or the Due Process Clause.

The facts are not in dispute. Consolidated Freightways (Consolidated) is incorporated in Delaware with its main offices in California. Consolidated is a general commodity common motor carrier operating in interstate commerce typically hauling small shipments—less than truckload size. It consolidates numerous small loads into fewer large loads and transports the consolidated loads through a system of terminals and established routes. Consolidated owns 14,000 trailers and 2,400 tractors. It maintains 410 terminals nationwide with thirteen terminals in Wisconsin including one regional consolidation center.

In 1966, the Wisconsin Department of Revenue (Department) adopted Wis. Admin. Code sec. Tax 2.47 (Tax 2.47)[2] which provides a formula for apportioning

_____

[2] Tax 2.47 Apportionment of net business income of interstate motor carriers of property.

768

franchise taxes assessed against motor carriers doing business in Wisconsin. The two factor formula adds (a) the ratio of gross receipts from carriage of goods first acquired in Wisconsin—the "originating" or "outbound" revenues—to gross receipts from carriage of property everywhere, and (b) the ratio of ton miles of carriage in Wisconsin to ton miles of carriage everywhere, and then (c) divides the total by two to average the results. The final figure is the percentage of the company's income subject to the Wisconsin franchise tax.

During the years 1974 through 1977, Consolidated apportioned its Wisconsin income using a different formula than the two factor formula in Tax 2.47.

(s. 71.07(2)(e), Stats.) The apportionable income of an interstate motor carrier of property, doing business in Wisconsin, shall be apportioned to Wisconsin, on the basis of the arithmetical average of the following 2 ratios:

(a) The ratio of the gross receipts from carriage of property first acquired for carriage in Wisconsin to the total gross receipts from carriage of property everywhere;

(b) The ratio of ton miles of carriage in Wisconsin to ton miles of carriage everywhere.

(2) Whenever gross receipts' data is not available, the department may authorize or direct substitution of a similar factor (e.g. gross tonnage) and whenever ton mile data is not available the department may similarly authorize substitution of a similar factor (e.g. revenue miles).

(3) For purposes of this regulation a "ton mile" reflects the movement of one ton of freight for the distance of one mile.

(4) This regulation shall not apply to mercantile or manufacturing businesses which engage in some interstate hauling as an incident of such mercantile or manufacturing businesses.

(5) This regulation shall apply with respect to the determination of income tax or franchise tax liability for any income year open to assessment or refund on the effective date hereof.

In 1979, the Department audited Consolidated and assessed an additional franchise tax and interest against Consolidated for calendar years 1974 through 1977 in the amount of $115,002.98, of which $110,333.75 of tax plus interest remains in dispute. The Department used the formula provided in Tax 2.47 to arrive at the assessment.

Consolidated argues that the Tax 2.47 formula, as applied to Consolidated, taxes income earned by Consolidated outside of Wisconsin and therefore violates sec. 71.07(2)(e) Stats., 1985-86[3] which limits Wisconsin's taxing jurisdiction to "income derived from business transacted and property located within the state." Consolidated further argues that the Tax 2.47 formula, as applied, violates the Commerce Clause,[4] which limits a state's power to tax interstate commerce, and the fourteenth amendment.[5]

---

[3] **Section 71.07 Situs of income; allocation and apportionment.**

> (2)(e) The net business income of financial organizations; and public utilities requiring apportionment shall be apportioned pursuant to rules of the department of revenue, but the income taxed is limited to the income derived from business transacted and property located within the state.

Chapter 71, after substantial revision by 1987 Act 27, was repealed and recreated by 1987 Act 312, sec. 2, effective January 1, 1989. Section 71.07(2)(e) was renumbered 71.04(8)(c) and 71.25(10)(c).

[4] United States Constitution, Article I, sec. 8: The Congress shall have power . . . To regulate commerce . . . among the several states . . ..

[5]Though Consolidated states that the formula as applied violates the fourteenth amendment, Consolidated does not specify how it is violated. In their brief, under the section claiming a fourteenth amendment violation, Consolidated discusses the four element test of *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977), restated in *Commonwealth Edison Co. v. Montana,*

Specifically, Consolidated argues that the formula's first factor, the "originating revenue" factor, taxes income derived from Consolidated's activities in other states. Consolidated earns income through various activities: sales, transportation (pickup and delivery, terminal activity, consolidation center activity, line haul movement), and management. Consolidated argues that the "originating revenue" factor does not measure Wisconsin activity alone but rather activity in other states as well since income is earned by activities for the length of the journey, not just the activities taking place in the originating state.

The court of appeals held that the Tax 2.47 formula, as applied to Consolidated, violated sec. 71.07(2)(e), Stats., as it taxed "extraterritorial income" and therefore did not reach the Commerce Clause issue raised by Consolidated. *Consolidated,* 157 Wis. 2d at 67, 76.

We conclude the formula, as applied to Consolidated, must be scrutinized under sec. 71.07(2)(e) Stats., the Commerce Clause, and the Due Process Clause. We hold the formula, as applied to Consolidated, does not violate the statute nor the Commerce or Due Process Clauses.

 Whether the Tax 2.47 formula, as applied to Consolidated, violates sec. 71.07(2)(e), Stats., the Commerce Clause, or the Due Process Clause, are questions of law. On review, this court decides questions of law independently without deference to the decisions of the trial court and court of appeals. *Ball v. District No. 4 Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). Special deference is to be afforded to an agency where

453 U.S. 609, 617 (1981). One of the elements is whether the tax discriminates against interstate commerce. Accordingly, we discuss that test as well as the Due Process Clause *infra.*

there has been a uniform interpretation over a period of time. *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990). However, when a legal question is presented and there is no evidence of any special expertise or experience, no weight at all is given to the agency interpretation. *Local No. 695,* 154 Wis. 2d at 84. Though the Department has experience in applying the Tax 2.47 formula to motor carriers, we agree with the court of appeals that the issue of whether Tax 2.47 as applied to Consolidated violates sec. 71.07(2)(e), Stats., is a question of law in which neither the Department nor the Tax Appeals Commission has evidenced any special expertise or experience. The Department's use of the Tax 2.47 formula does not by itself establish the Department has pursued a "course of uniform interpretation over a period of time." *Local No. 695,* 154 Wis. 2d at 84. Routine and mechanical application of a formula does not equate with interpretation of its underlying legality. Thus, this court will afford no deference to the Department's or the Tax Appeals Commission's interpretation in this case.

Referring to *Moorman Mfg. Co. v. Bair,* 437 U.S. 267 (1978), which analyzed a tax formula under the Due Process and Commerce Clauses, the court of appeals in this case stated, "[w]hatever impact *Moorman* might have on a federal constitutional issue, we do not believe it controls our interpretation of a state statute prohibiting extraterritorial taxation." *Consolidated,* 157 Wis. 2d at 72 n.2.

We disagree. The Commerce Clause is necessarily relevant to sec. 71.07(2)(e), Stats., analysis since the Commerce Clause imposes limits upon Wisconsin's tax jurisdiction over "business transacted" within this state by interstate motor carriers.

This court has traditionally looked to the Commerce Clause to ascertain the limits upon Wisconsin's tax jurisdiction over interstate businesses. In *United States Glue Co. v. Oak Creek,* 161 Wis. 211, 153 N.W. 241 (1915), *aff'd,* 247 U.S. 321 (1918),[6] plaintiff challenged a tax assessment, alleging it taxed income derived outside this state in violation of the Income Tax Laws of 1911 which stated: "[A]ny person engaged in business within and without this state shall . . . be taxed only upon that proportion of such income as *is derived from business transacted and property located within the state.*" Section 1087m-2, ch. 48a sub 3, Laws of 1911. (Emphasis added.)

The *U.S. Glue* case first decided the "statutory" question; namely, what portion of the glue company's total net business income is income " 'derived from business transacted and property located within this state,' and [is] subject to the tax upon incomes?" *U.S. Glue,* 161 Wis. at 216. The company argued that only the income derived from the manufacture, sale, and delivery of the glue products at its factory in Wisconsin to other points in Wisconsin yielded income derived from business transacted in Wisconsin. This court disagreed, concluding that *all* income derived from the manufacture, sale, and delivery of the products to points both within and outside of Wisconsin was income derived from business transacted within this state. The court stated:

---

[6]The United States Supreme Court stated:

It is settled that a State may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule.

*U.S. Glue,* 247 U.S. at 326.

> We are of the opinion that this provision of the statute includes all of plaintiff's net "business income" derived from the manufacture, sale, and delivery of such of its products as were manufactured at, sold, and delivered from the factory to customers in Wisconsin and other states . . ..

*U.S. Glue,* 161 Wis. at 216.

The court then considered whether the taxation of income derived from those activities violated the Commerce Clause by taxing interstate commerce and held that it did not.

The *U.S. Glue* case recognized that the jurisdictional limitations under the Commerce Clause are relevant to the tax statute. Such relevance was again recognized in *Standard Oil Co. v. Wisconsin Tax Comm.,* 197 Wis. 630, 633 233 N.W. 85 (1929). Interpreting a portion of sec. 71.01 Stats., 1925, providing: "Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state," this court specifically recognized that Wisconsin's lack of jurisdiction to tax income earned in other states comes not from limitations Wisconsin imposes upon itself, but rather from the limitations the Commerce Clause imposes upon Wisconsin:

> In prescribing these methods of allocating income of persons doing business within and without this state, it is apparent that it was the legislative intent that the method prescribed should be so applied as to subject the income earned within the state to taxation and no more, the legislature quite evidently having in mind that it had no jurisdiction to tax income earned in other states. *U.S. Glue Co. v. Oak Creek,* 161 Wis. 211, 153 N.W. 241 [1915].

*Standard Oil,* 197 Wis. at 634.

In *Moore Motor Freight Lines v. Dept. of Taxation,* 14 Wis. 2d 377, 111 N.W.2d 148 (1961), this court applied the same analysis. Plaintiff, an interstate common motor carrier incorporated in Minnesota and transporting goods to, from, and through Wisconsin and other states, challenged a Wisconsin tax assessment as violative of secs 71.01 and 71.07 Stats., 1961.[7]

The Department of Taxation applied an apportionment formula to ascertain the amount of income earned by Moore Freight Lines in Wisconsin. The court inquired: (1) whether Moore Freight Line's operations fell under ch. 71, Stats., (2) whether the imposition of the net tax violated the Commerce Clause, and (3) whether the imposition of the net tax violated the Due Process Clause of the Fourteenth Amendment. *Moore,* 14 Wis. 2d at 381.

The court determined that a business transporting goods to, from, and through Wisconsin earns income

---

[7] **Section 71.01 Imposition of tax; exempt income.**

(1) Normal Tax. For the purpose of raising revenue for the state and the counties, cities, villages and towns, there shall be assessed, levied, collected and paid a tax on all net incomes as hereinafter provided, by every person residing within the state or by his personal representative in case of death; and by every nonresident of this state, upon such income as is derived from property located or business transacted within the state . . . except as hereinafter exempted.

**Section 71.07 Situs of income; allocation and apportionment.**

(2) Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state.

(5) If the income of any such person properly assignable to the state of Wisconsin cannot be ascertained with reasonable certainty by either of the foregoing methods, then the same shall be apportioned and allocated under such rules and regulations as the department of taxation may prescribe.

"derived from business transacted and property located within this state," and thus Moore Freight Line's activities were subject to taxation under ch. 71, Stats. The court then held that the imposition of the tax upon such income did not violate the Commerce Clause or the Due Process Clause. *Moore*, 14 Wis. 2d at 392, 396.

In *W.R. Arthur & Co. v. Department of Taxation*, 18 Wis. 2d 225, 118 N.W.2d 168 (1962), this court considered whether a formula used by the Department to apportion the Arthur Company's Wisconsin income violated sec. 71.07 Stats., or Wis. Admin. Code sec. Tax 2.45. Tax 2.45 required that the department's formula "reasonably apportion to Wisconsin the business income properly assignable to Wisconsin." The court held that the formula was reasonable under the statute and the Code, and adopted the burden of proof as required under the Commerce Clause. The court stated:

> We share the view expressed by the United States supreme court in *Butler Brothers v. McColgan* (1942), 315 U.S. 501, 507, 62 Sup. Ct. 701, 86 L. Ed. 991: "One who attacks a formula of apportionment carries a distinct burden of showing by 'clear and cogent evidence' that it results in extraterritorial values being taxed."

*Arthur,* 18 Wis. 2d at 232.

From the above cases it is clear that several steps are involved when analyzing interstate motor carrier tax cases. The first question is: were the operations of the interstate motor carrier such as to subject it to taxation under sec. 71.07(2)(e), Stats.? That is answered by inquiring whether the interstate motor carrier is being taxed on its income for transacting business within this state. If so, the statute applies and the question becomes:

does Wisconsin's tax upon such income violate either the Commerce or Due Process Clauses?

The statute applies. The income taxed by the Tax 2.47 formula is income "derived from" Consolidated's business transactions within Wisconsin and thus is subject to taxation under sec. 71.07(2)(e) Stats. Consolidated's activities in Wisconsin consist of transporting goods to, from, and through Wisconsin's thirteen terminals and the management and consolidation activities engaged in at the terminals. These activities produce income for Consolidated which is derived from its business transactions in this state.

In *Moore,* 14 Wis. 2d 383-85, this court held that the activities of Moore Freight Lines, an interstate common carrier incorporated in Minnesota, transporting goods to, from, and through Wisconsin, fell under sec. 71.01(1), Stats., since such activities were business transactions within Wisconsin and produced income derived from this state. As Consolidated also transports goods to, from, and through Wisconsin, income derived from such activities, as well as income derived from its Wisconsin terminal activities, constitutes income derived from its activities in Wisconsin.

The tax assessment upon Consolidated's Wisconsin income does not violate the limits of the Commerce Clause. In *Moore,* 14 Wis. 2d 386-92, this court analyzed several cases to ascertain the limitations of the Commerce Clause at that time.[8]

---

[8]*Moore,* 14 Wis. 2d at 386-88, 111 N.W.2d at 153-55 (quoting *Northwestern States Portland Cement Co. v. Minnesota,* and *Williams v. Stockham Valves & Fittings, Inc.,* 358 U.S. 450, 452 (1959) ("We conclude that net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly appor-

■ Under recent Commerce Clause cases, a state tax does not offend the Commerce Clause if the tax:

(1) is applied to an activity with a substantial nexus with the taxing state,

(2) is fairly apportioned,

(3) does not discriminate against interstate commerce, and

(4) is fairly related to services provided by the state.

*Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 617 (1981) (citing *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274 (1977)).

First, both parties agree that there is a sufficient nexus between Consolidated's activities and Wisconsin to meet the nexus factor.

---

tioned to local activities within the taxing state forming sufficient nexus to support the same."); *United States Glue Co. v. Town of Oak Creek,* 247 U.S. 321 (1918) (affirming *United States Glue Co. v. Town of Oak Creek,* 161 Wis. 211 (1915) ("In this case, the supreme court held that a state, in applying a net income tax of general impact to a corporation doing business within its borders, may reach income derived from interstate commerce to the extent that such income is fairly related to corporate activities within the state.")); and *ET & WNC Transportation Co. v. Currie,* 359 U.S. 28 (1959) ("[T]he state's income tax, imposed upon that part of the net income earned within the state by a foreign motor carrier engaged exclusively in interstate commerce, was valid and did not impose a burden upon interstate commerce, since the tax was imposed only upon that portion of the motor carrier's net income reasonably attributable to its interstate business performed within the borders of the state, without any discrimination against such carrier.").

Second, the tax assessment against Consolidated is fairly apportioned. In *Arthur,* this court held that the formula used by the Department to apportion the Arthur Company's income to Wisconsin did not violate either Wis. Admin. Code sec. Tax 2.45, requiring that the department's formula "reasonably apportion to Wisconsin the business income properly assignable to Wisconsin," or sec. 71.07 Stats.

Though *Arthur* interpreted both sec. 71.07 Stats. and a Wisconsin Administrative Code section, it is nevertheless instructive as to whether the taxes assessed against Consolidated using the two factor Tax 2.47 formula, are "fairly apportioned" under the Commerce Clause.

W.R. Arthur was an interstate trucking company, organized under Illinois law with its corporate offices in Janesville, Wisconsin. Its principle activity was the delivery of automobiles manufactured in Wisconsin to automobile dealers in eleven states, including Wisconsin. W.R. Arthur challenged the Department's formula, which consisted of the same two factors present in this case, originating revenue and revenue miles, plus a third factor, payroll. As in this case, the only factor challenged was the originating revenue factor.

In *Arthur,* because all of the company's shipments were outbound, that is, all of its income was earned on loads "originating" in Wisconsin, the originating revenue factor equaled the company's gross receipts. This court held:

> If used as a single factor, gross receipts [the "originating revenue factor"] would result in all of the taxpayer's income being taxed here, and this would obviously constitute an unfair tax. However, when it is used in conjunction with the two other factors, it

cannot be said to be arbitrary or to result in an unfair apportionment of the income of the respondent under sec. 71.07(5), Stats.

*Arthur*, 18 Wis. 2d at 231.

The burden of proof is not on the Department to show that the formula is fair. Rather, as adopted in *Arthur*, 18 Wis. 2d at 232, and revised in *Moorman*, the burden is upon the taxpayer:

> States have wide latitude in the selection of apportionment formulas and that a formula-produced assessment will only be disturbed when the taxpayer has proved by "clear and cogent evidence" that the income attributed to the State is in fact "out of all appropriate proportions to the business transacted . . . in that State," or has "led to a grossly distorted result."

*Moorman*, 437 U.S. at 274 (citations omitted); *see also Arthur*, 18 Wis. 2d at 232. Consolidated has not met its burden.

In the present case, the parties make a comparison between the percentage of Consolidated's income apportioned to Wisconsin by the Department using Tax 2.47 and by Consolidated using its own formula.[9]

| | 1974 | 1975 | 1976 | 1977 |
|---|---|---|---|---|
| Consolidated's formula: | 2.3215% | 2.2179% | 2.2757% | 2.1626% |
| Tax 2.47 formula: | 3.2730% | 3.2149% | 3.1860% | 3.2433% |

[9]Consolidated admitted, and the Tax Appeals Commission found, that Consolidated "has no means to allocate costs or revenues, in the nature of a separate accounting, to activity in Wisconsin."

The parties agree the Tax 2.47 formula taxes approximately an additional 1.1 percent of Consolidated's income averaged for the years 1974 through 1977.

A 1.1 percent variance during a select time span does not "clearly and cogently" show that the apportionment under Tax 2.47 was "out of all proportions" to business transacted within this state nor that it has led to a "grossly distorted" result. We agree with the observations and reasoning in *Moorman*, 437 U.S. at 273. Since 1966 the Department of Revenue has used the two factor formula of Wis. Admin. Code Tax 2.47. This method, unlike separate accounting, does not purport to identify the precise geographical source of a corporation's profits; rather, it is employed as a "rough approximation" of a corporation's income that is reasonably related to the activities conducted within Wisconsin. The two factor formula, therefore, generally will not produce a figure that represents the actual profits earned within the State. But the same is true of Consolidated's formula. Both will occasionally over-reflect or under-reflect income attributable to Wisconsin.

Third, the Tax 2.47 formula is not discriminatory. Consolidated argues that the Tax 2.47 formula has the effect of taxing non-Wisconsin transportation companies more heavily than Wisconsin companies. Consolidated asserts that the outbound revenues factor causes the apportionment distortion to steadily increase the longer the haul and the more activity the company has in other states. Consolidated argues that since Wisconsin companies generally have shorter hauls than non-Wisconsin companies, the non-Wisconsin companies, like Consolidated, are effectively taxed at a higher rate.

781

Consolidated relies on general language in several federal cases finding state taxes discriminatory, to support its claim that the Tax 2.47 formula is discriminatory. Unlike the present case, however, these cases considered taxes which encompasses specific exemption, tax credits, or other provisions which treat in-state and out-of-state businesses differently.

Consolidated quotes *Boston Stock Exchange v. State Tax Comm'n.,* 429 U.S. 318, 335 (1977):

> There has been no prior occasion expressly to address the question whether a State may tax in a manner that discriminates between two types of interstate transaction in order to favor local commercial interests over out-of-state businesses, but the clear import of our Commerce Clause cases is that such discrimination is constitutionally impermissible.

In *Boston,* the Supreme Court held that an amendment to a New York tax statute violated the Commerce Clause. The statute imposed a transfer tax on securities transactions. The tax rate was based solely on the price of the securities and the total tax was determined by the number of shares sold. The amendment first provided that transactions by non-residents are afforded a 50 percent reduction in the rate of tax when the transaction involves an in-state sale. Second, the amendment limited the total tax liability of any taxpayer (resident or non-resident) to $350.00 (maximum tax) for a single transaction when it involves a New York sale. The Supreme Court held, "[b]ecause it imposes a greater tax liability on out-of-state sales than on in-state sales, the New York transfer tax, as amended by § 270-a, falls short of the substantially even-handed treatment demanded by the Commerce Clause." *Boston,* 429 U.S. at 332.

Consolidated quotes *Maryland v. Louisiana,* 451 U.S. 725, 759-60 (1981):

It may be true that further hearings would be required to provide a precise determination of the extent of the discrimination in this case, but this is an insufficient reason for not now declaring the Tax unconstitutional and eliminating the discrimination. We need not know how unequal the Tax is before concluding that it unconstitutionally discriminates.

In *Maryland,* the Supreme Court held that a Louisiana Act aimed at taxing the "first use" of any natural gas imported from the federally owned outer continental shelf violated the Commerce Clause. The Court held that the tax "unquestionably discriminates against interstate commerce in favor of local interests as a result of various tax credits and exclusions." *Maryland,* 451 U.S. at 756. For example, the use of gas for certain purposes, if used within Louisiana, is exempt for the first use tax. In addition, an owner paying the first use tax on the gas receives an equivalent tax credit on any Louisiana state severance tax.

Consolidated quotes *Armco Inc. v. Hardesty,* 467 U.S. 638, 642 (1984): "a State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." In *Armco,* West Virginia taxed gross receipts on persons engaged in the business of selling tangible property at wholesale. Manufacturers located in West Virginia, however, were exempt from the tax. The Court held that the tax violated the Commerce Clause since, due to the exemption, "[t]he tax provides that two companies selling tangible property at wholesale in West Virginia will be treated differently depending on whether the taxpayer conducts manufacturing in the State or out of it." *Armco,* 467 U.S. at 642.

In the present case, the circuit court relied on *Commonwealth Edison* in finding the Tax 2.47 formula non-

discriminatory. In *Commonwealth Edison,* the Supreme Court upheld Montana's severance tax on coal mined in Montana finding the tax to be non-discriminatory. Consolidated, however, asserts that *Commonwealth Edison* was "rejected" in a subsequent motor carrier case, *American Trucking Assns., Inc. v. Scheiner,* 483 U.S. 266 (1987). *American Trucking* distinguished, rather than rejected, *Commonwealth Edison* since the type of tax challenged in *Commonwealth Edison* was different than the tax challenged in *American Trucking.*

In *American Trucking,* the Supreme Court held that Pennsylvania's "marker" tax and "axle" tax statutes, which imposed lump-sum annual taxes on the operation of motor carriers, violated the Commerce Clause. Pennsylvania required an identification marker to be affixed to every motor carrier. Until 1980, the "marker" tax was $2.00 per vehicle. In 1980, the "marker" tax was raised to $25.00. Vehicles registered in Pennsylvania were effectively exempted from this increase since the statute specifically provided that for each vehicle registered in Pennsylvania, the "marker fee shall be deemed a part of and included in the vehicle registration fee." *American Trucking,* 483 U.S. at 273-74.

In 1982, Pennsylvania imposed an "axle" tax requiring an annual fee of $36.00 per axle. Again, Pennsylvania effectively exempted vehicles registered in Pennsylvania since the statute also reduced the registration fees for those vehicles registered in Pennsylvania subject to the axle tax.

The Supreme Court in *American Trucking* distinguished Pennsylvania's flat taxes from Montana's coal severance tax in *Commonwealth Edison.* The coal severance tax was levied at varying rates depending on the value, energy content, and method of extraction of the coal. *Commonwealth Edison,* 453 U.S. at 613. It was

784

computed at the same rate regardless of the final destination of the coal, whether it was shipped in-state or out-of-state. *Commonwealth Edison,* 453 U.S. at 618. The Supreme Court in *American Trucking* stated:

> The flat taxes in this case are distinguishable [from Montana's severance tax] in two ways. First, the amount of Pennsylvania's marker and axle taxes owed by a trucker does not vary directly with miles traveled or with some other proxy for value obtained from the state . . .. Second, unlike the Montana coal tax, highway use taxes can be imposed by other states.

*American Trucking,* 483 U.S. at 291.

*American Trucking's* first reason for distinguishing *American Trucking's* flat "marker" and "axle" taxes from the *Commonwealth Edison* coal severance tax is precisely the same reason *American Trucking's* flat taxes are distinguishable from Wisconsin's tax formula. Wisconsin's formula *does* vary with miles travelled and with "some other proxy for value obtained" from Wisconsin. The first factor of Wisconsin's formula, the originating revenues factor, is the "proxy" for value obtained by Consolidated in Wisconsin. The second factor, the ton miles ratio, is a function of miles travelled.

Therefore, since the Tax 2.47 formula is distinguishable from *American Trucking* for the same reason that the tax challenged in *Commonwealth Edison* was, we are persuaded that the holding and rationale of *Commonwealth Edison,* and not *American Trucking,* applies to the present case. The formula is not facially discriminatory between in-state and out-of-state carriers. In addition, the formula is unlike the flat taxes in *American Trucking* which effectively exempted vehicles registered in-state. The Tax 2.47 formula is apportioned by averag-

ing the ratios of originating miles and ton miles, not according to distinctions between in-state and out-of-state businesses. Unlike the taxes in the cases relied upon by Consolidated, the Tax 2.47 formula contains no exemptions, credits, or provisions that treat in-state carriers differently than out-of-state carriers. The distinction between intrastate and interstate business is the issue. As found in *Commonwealth Edison,* 453 U.S. at 618, "[w]e are not, therefore, confronted here with the type of differential tax treatment of interstate and intrastate commerce that the Court has found in other 'discrimination' cases."

The essence of *Complete Auto Transit*'s fourth element, that the tax be fairly related to services provided by the state, was explained in *Commonwealth Edison:*

> The relevant inquiry under the fourth prong of the *Complete Auto Transit* test is not, as appellants suggest, the *amount* of the tax or the *value* of the benefits allegedly bestowed as measured by the costs the State incurs on account of the taxpayer's activities . . .. [T]he fourth prong of the *Complete Auto Transit* test imposes the additional limitation that the *measure* of the tax must be reasonably related to the extent of the contact, since it is the activities or presence of the taxpayer in the State that may properly be made to bear a "just share of state tax burden."

*Commonwealth Edison,* 453 U.S. 626–27 (citations omitted).

In the present case, the tax formula is "reasonably related" to Consolidated's "contact" within Wisconsin. The income earned by Consolidated through its transportation of goods to, from, and through Wisconsin, and through its thirteen terminals in Wisconsin, reasonably

and fairly relates to Wisconsin for taxation purposes under the Commerce Clause.

Because we hold that the Commerce Clause is not violated, we also hold the Due Process Clause[10] is not violated. In *Trinova Corp. v. Michigan Dept. of Treasury,* — U.S. —, 111 S. Ct. 818 (1991), the Supreme Court stated that the four element Commerce Clause test encompasses the Due Process requirements:

> The *Complete Auto* test, while responsive to Commerce Clause dictates, encompasses as well the Due Process requirement that there be "a 'minimal connection' between the interstate activities and that taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise."

*Trinova,* — U.S. —, 111 S. Ct. at 828 (citations omitted).

*By the Court.*—The decision of the court of appeals is reversed.

---

[10] United States Constitution, Article XIV, sec. 1: No state shall . . . deprive any person of life, liberty, or property, without due process of law . . ..