UNITED PARCEL SERVICE CO., Petitioner-Appellant,†

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent-Respondent.

Court of Appeals

*No. 95–2493. Submitted on briefs March 11, 1996.—Decided July 31, 1996.*

(Also reported in 553 N.W.2d 861.)

†Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *David D. Wilmoth* of *Quarles & Brady* of Milwaukee, and *Richard D. Birns* of Philadelphia, PA.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gerald S. Wilcox*, assistant attorney general.

Before Dykman, Sundby and Vergeront, JJ.

VERGERONT, J.   United Parcel Service Company (UPSCO) appeals from a trial court order affirming a decision of the Wisconsin Tax Appeals Commission. The Commission upheld UPSCO's franchise tax assessments for 1985 and 1986 imposed by the Wisconsin Department of Revenue using the apportionment formula under WIS. ADM. CODE § TAX 2.46.[1]   UPSCO   contends:   (1)   the   apportionment

---

[1] WISCONSIN ADM. CODE § TAX 2.46 provides in part:

The apportionable income of an interstate air carrier doing business in Wisconsin shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the following 3 ratios:

(1)   The ratio which the aircraft arrivals and departures within this state scheduled by such carrier during the calendar or fiscal year bears to the total aircraft arrivals and departures within and without this state scheduled by such carrier during the same period.

(2)   The ratio which the revenue tons handled by such carrier at airports within this state during the calendar or fiscal year bears

formula, as applied by the Department, violated the Due Process and Commerce Clauses of the United States Constitution because one of the factors used in the apportionment formula (the arrivals and departures factor) is unrelated to UPSCO's Wisconsin income, and the use of that factor attributed income to Wisconsin out of all appropriate proportion to the business transacted in Wisconsin; (2) the Department erroneously refused to modify the arrivals and departures factor under § 71.07(3) and (5), STATS., 1985-86; and (3) WIS. ADM. CODE § TAX 2.46 should be interpreted to require the arrivals and departures factor to be calculated using the takeoff and landing weight of arriving and departing aircraft, rather than the raw number of such aircraft. We reject each of these contentions and affirm.

## BACKGROUND

The following facts were stipulated by the parties. UPSCO is a Delaware corporation that provides a national and international air transportation service for small packages. During the years at issue, 1985 and 1986, UPSCO transacted business in Wisconsin and derived income from such business activity.

UPSCO provides service using seven different types of aircraft. In 1985 and 1986, UPSCO used its smallest aircraft—the Fairchild Expediter—almost exclusively for Wisconsin flights. That aircraft has a

to the total revenue tons handled at airports within and without this state during the same period . . .;

(3) The ratio which such air carrier's originating revenue within this state for the calendar or fiscal year bears to the total originating revenue within and without this state for the same period.

maximum payload of 4,450 pounds.[2] Although Fairchild Expediters represented only 21 percent of UPSCO's flights overall during those years, they accounted for 89-92 percent of flights arriving or departing in Wisconsin.

UPSCO's charges for transporting an air package are a function of the level of service (i.e., next-day service, second-day service), the weight of the package and the destination. The average weight of packages picked up and delivered in any geographical region is uniform. Similarly, the distribution of the levels of service and the destinations of packages do not vary significantly by the geographical origin of packages. Accordingly, the dollar amounts UPSCO receives from its customers, both overall and within any particular geographical area, are a function of the number of packages transported. Similarly, UPSCO's expenses, both overall and within any particular geographical area, are a function of the number of packages transported.

As an air carrier, UPSCO is a "public utility" for purposes of the Wisconsin franchise tax. The determination of what portion of a public utility's income is subject to franchise tax assessment is governed by § 71.07(2)(e), STATS., 1985-86,[3] which provides:

> The net business income of . . . public utilities [that conduct business both within and without the

---

[2] In contrast, the next largest aircraft used by UPSCO during that time, a Boeing 727-100, has a maximum payload of 45,830 pounds. The largest aircraft used by UPSCO has a maximum payload of 220,000 pounds.

[3] The Wisconsin statutes regarding income and franchise taxes were repealed and recodified by 1987 Wis. Act 312, effective January 1, 1989. The recodification changed § 71.07(2)(e), STATS., to § 71.25(10)(c), STATS.

state] shall be apportioned pursuant to rules of the department of revenue, but the income taxed is limited to the income derived from business transacted and property located within the state.

The Department has adopted a specific rule regarding apportionment of the income of interstate air carriers. WISCONSIN ADM. CODE § TAX 2.46 provides that such income should be apportioned using a three-factor formula. The formula takes the average of three ratios: (1) the ratio of aircraft arrivals and departures within the state to total aircraft arrivals and departures; (2) the ratio of revenue tons handled in the state to total revenue tons; and (3) the ratio of originating revenue within the state to total revenue. The resulting figure represents the percentage of the public utility's income subject to the Wisconsin franchise tax.

In preparing its 1985 and 1986 Wisconsin franchise tax returns, UPSCO calculated the arrivals and departures factor in those years using the takeoff and landing weight of arriving and departing aircraft rather than the raw number of such aircraft. This was done to account for the much more frequent use of small aircraft in Wisconsin. UPSCO believed that a factor based on unweighted arrivals and departures distorted its Wisconsin business activity and income. UPSCO's calculations resulted in an arrivals and departures ratio of .707789 percent in 1985 and .816660 percent in 1986.

In an audit of UPSCO, the Department of Revenue deleted takeoff and landing weight from UPSCO's computation of the arrivals and departures factor and calculated the factor based on the raw number of arriving and departing flights. The Department calculated an arrivals and departures ratio of 6.167805 percent

for 1985 and 4.437488 percent for 1986.[4] Consequently, the arrivals and departures factor used by the Department for 1985 was 8.7 times that reported by UPSCO. The factor used by the Department for 1986 was 5.4 times that reported by UPSCO. The use of the raw number of arrivals and departures, as opposed to a factor based on takeoff and landing weight: (1) increased UPSCO's average apportionment factor from 1.67 percent to 3.47 percent in 1985, and from 1.58 percent to 2.79 percent in 1986; (2) increased the income apportioned to Wisconsin for 1985 and 1986 by 110 percent and 76 percent, respectively; and (3) increased UPSCO's Wisconsin franchise taxes from $299,527 to $546,939 in 1985, and from $445,733 to $748,837 in 1986.

After the Department denied its petition for redetermination, UPSCO appealed its franchise tax assessments for 1985 and 1986 to the Wisconsin Tax Appeals Commission, raising three arguments. First, UPSCO argued that the apportionment formula, as applied by the Department, violated the Commerce and Due Process Clauses of the United States Constitution because the unweighted arrivals and departures factor was unrelated to UPSCO's income and its use attributed to Wisconsin an amount of income that was out of all appropriate proportion to UPSCO's business activities there. Second, UPSCO argued that it was entitled to relief under § 71.07(3) and (5), STATS., 1985-86, which, according to UPSCO, permit the Department to depart from standard methods of apportionment where such methods would produce an

---

[4] Under each party's calculations, the revenue tons factor for 1985 and 1986 was 1.93375 percent and 1.872719 percent, respectively, and the originating revenue factor for 1985 and 1986 was 2.312998 percent and 2.062386 percent, respectively.

unfair or inequitable result. Third, UPSCO argued that WIS. ADM. CODE § TAX 2.46 should be interpreted to require a weighted, rather than an unweighted, arrivals and departures factor. UPSCO noted that the Department itself had interpreted the formula in this manner from the date WIS. ADM. CODE § TAX 2.46 was adopted until 1980, when the Department reversed its interpretation on the basis of a decision from the Dane County Circuit Court.

The Tax Appeals Commission affirmed the assessments. Relying on *Consolidated Freightways Corp. v. DOR*, 164 Wis. 2d 764, 477 N.W.2d 44 (1991), the Commission held that an average variance of 1.5 percent between the parties' disputed methods in the percentage of UPSCO's income apportioned to Wisconsin for the two years in dispute did not "clearly and cogently" show that the apportionment was "out of all appropriate proportion to the business transacted in [this] state" nor that it had "led to a grossly distorted result." The Commission did not address UPSCO's arguments regarding § 71.07(3) and (5), STATS., 1985-86, or how WIS. ADM. CODE § TAX 2.46 should be interpreted.

The trial court affirmed the Commission. The trial court also concluded that § 71.07(3) and (5), STATS., 1985-86, did not apply to UPSCO, and that WIS. ADM. CODE § TAX 2.46 cannot be read to provide for a weighted arrivals and departures factor.

## STANDARD OF REVIEW

In *Consolidated Freightways*, the supreme court held that the question of whether the Department's application of a related apportionment formula, WIS. ADM. CODE § TAX 2.47, to an interstate motor carrier violates a state statute or the Due Process and Commerce Clauses of the United States Constitution is a

70

question of law which a reviewing court may decide without giving any deference to the interpretation of the Department or the Commission. The court stated:

> Though the Department has experience in applying the TAX 2.47 formula to motor carriers, we agree with the court of appeals that the issue of whether TAX 2.47 as applied to Consolidated violates sec. 71.07(2)(e), STATS., is a question of law in which neither the Department nor the Tax Appeals Commission has evidenced any special expertise or experience. The Department's use of the TAX 2.47 formula does not by itself establish the Department has pursued a "course of uniform interpretation over a period of time." Routine and mechanical application of a formula does not equate with interpretation of its underlying legality. Thus, this court will afford no deference to the Department's or the Tax Appeals Commission's interpretation in this case.

*Consolidated Freightways*, 164 Wis. 2d at 772, 477 N.W.2d at 47 (citation omitted).

Following the rationale in *Consolidated Freightways*, we review the issues raised by UPSCO de novo.

## DUE PROCESS AND COMMERCE CLAUSES

UPSCO's primary argument is that the Department's use of an unweighted arrivals and departures factor caused the apportionment formula, as applied to UPSCO, to violate the Due Process and Commerce Clauses of the United States Constitution because: (1) the unweighted factor is not reasonably related to UPSCO's income, and (2) the formula attributed income to Wisconsin out of all appropriate proportion to the business transacted in the state. UPSCO con-

tends that because its income is a function of package volume and an unweighted arrivals and departures factor has no definite relationship to package volume, the factor does not bear a reasonable relationship to UPSCO's business.

■

State taxation of business income earned in interstate commerce must be consistent with the Commerce Clause and the Due Process Clause of the Fourteenth Amendment. *Mobil Oil Corp. v. Comm'r of Taxes*, 445 U.S. 425, 436-37 (1980); *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 274-75 (1977). As a general rule, a state cannot tax value earned beyond its borders. *Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983). However, a state tax applied to interstate commerce does not violate the Commerce Clause if the tax: (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to services provided by the state. *Complete Auto Transit*, 430 U.S. at 279.[5] The dispute in this case concerns only the second factor:

---

[5] A state tax will be consistent with the Due Process Clause of the Fourteenth Amendment if: (1) there is a minimal connection between the interstate activities to be taxed and the taxing state, and (2) there is a rational relation between the income attributed to the taxing state and the intrastate value of the business. *Allied-Signal, Inc. v. Division of Taxation*, 504 U.S. 768, 772, 119 L.Ed.2d 533, 542 (1992). However, because a state tax that is consistent with the Commerce Clause is also consistent with the Due Process Clause, we discuss only the Commerce Clause. *Trinova Corp. v. Michigan Dep't of Treasury*, 498 U.S. 358, 373 (1991); *Consolidated Freightways Corp. v. DOR*, 164 Wis. 2d 764, 787, 477 N.W.2d 44, 53-54 (1991).

whether the franchise taxes imposed on UPSCO were fairly apportioned.

To be fairly apportioned, the tax may only be imposed on income earned from business conducted within Wisconsin. However, states have wide latitude in the selection of a formula used to apportion the income of an interstate business. *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 274 (1978). The Constitution imposes no single formula upon the states. *A.T. & T. v. DOR*, 143 Wis. 2d 533, 550, 422 N.W.2d 629, 636 (Ct. App. 1988). A formula-produced assessment will only be disturbed when the taxpayer has proven by "clear and cogent evidence" that the income attributed to the state is in fact "out of all appropriate proportion to the business transacted in that state" or has "led to a grossly distorted result." *Moorman Mfg. Co.*, 437 U.S. at 274.

In *Consolidated Freightways*, the supreme court addressed a similar challenge to an apportionment formula applied by the Department for interstate motor carriers. Consolidated Freightways was a general commodity motor carrier transporting small shipments throughout the country. The Department imposed franchise taxes on Consolidated Freightways using WIS. ADM. CODE § TAX 2.47, which provides a two-factor apportionment formula for motor carriers conducting business in Wisconsin. The formula adds (1) the ratio of gross receipts from carriage of goods first acquired in Wisconsin—the "originating" or "outbound" revenues—to gross receipts from carriage of goods everywhere, and (2) the ratio of ton miles of carriage in Wisconsin to ton miles of carriage everywhere, and then divides the total by two. The final figure rep-

resents the percentage of the company's income subject to the Wisconsin franchise tax.

Consolidated Freightways challenged the application of the apportionment formula on the grounds that it reached income earned by the company in other states in violation of § 71.07(2)(e), STATS., 1985-86, and the Commerce and Due Process Clauses of the United States Constitution. Specifically, Consolidated Freightways claimed that because of the nature of its business—hauling shipments long-distance and earning income on a given shipment from the entire multistate journey—the apportionment formula's use of outbound or originating revenue in the first factor apportioned too much of its income to Wisconsin. Consolidated Freightways argued that the outbound revenue factor measured activity in other states because the income for a shipment was earned not merely by activities in Wisconsin but also by activities in other states. *Consolidated Freightways*, 164 Wis. 2d at 771, 477 N.W.2d at 47.

The supreme court concluded that the apportionment formula as applied to Consolidated Freightways taxed only income derived from business transacted within the state and did not violate § 71.07(2)(e), STATS., 1985-86, the Commerce Clause or the Due Process Clause. The court first stated that there are two steps involved in analyzing a tax on an interstate business: (1) whether the operations of the business are such as to subject it to taxation under § 71.07(2)(e), 1985-86; and (2) if so, whether the tax upon such income violates the Commerce and Due Process Clauses. The court concluded that the tax imposed on Consolidated Freightways satisfied the first step of the test because Consolidated Freightways' activities in Wisconsin, consisting of transporting goods to, from

and through terminals located in Wisconsin, and the management and consolidation activities engaged in at the terminals, produced income for the business. *Consolidated Freightways*, 164 Wis. 2d at 777, 477 N.W.2d at 49.

With respect to the second step of the analysis, the court applied the four-part Commerce Clause test, *see Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977), the second part of which asks whether the tax is fairly apportioned. In evaluating whether the tax was fairly apportioned, the court did not focus on whether the single challenged factor in the apportionment formula (originating revenue) was reasonably related to the taxpayer's Wisconsin income. Rather, the court looked at whether the formula, using all of the factors, attributed income "out of all appropriate proportion to the business transacted . . . in that State," or has "led to a grossly distorted result." *Consolidated Freightways*, 164 Wis. 2d at 780, 477 N.W.2d at 50-51 (citing *Moorman Mfg. Co.*, 437 U.S. at 274).

The court concluded that a 1.1 percent variance between the percentage of Consolidated's income apportioned to Wisconsin by the Department using WIS. ADM. CODE § TAX 2.47 and by Consolidated using its own formula did not "clearly and cogently" show that the apportionment under TAX 2.47 was out of all appropriate proportion to the business transacted within this state, nor that it had led to a "grossly distorted" result. *Consolidated Freightways*, 164 Wis. 2d at 781, 477 N.W.2d at 51.[6]

UPSCO does not dispute that its operations are such as to subject it to taxation under § 71.07(2)(e),

---

[6] The factor that the taxpayer in *Consolidated Freightways* substituted for the originating revenue factor was not specified.

STATS., 1985-86, so we address only the second step of the analysis in *Consolidated Freightways*. Applying that analysis, we conclude UPSCO has failed to meet its burden of proving by clear and cogent evidence that the apportionment formula, as applied by the Department, attributed income to Wisconsin "out of all appropriate proportion" to the business transacted in Wisconsin, or "led to a grossly distorted result." As noted by the trial court, the average variance in the percentage of UPSCO's income apportioned to Wisconsin between the parties' disputed methods in the years 1985 and 1986 is approximately 1.5 percent. In light of *Consolidated Freightways*' conclusion that a 1.1 percent increase was constitutionally acceptable, we cannot conclude that a 1.5 percent increase constitutes clear and cogent evidence that the apportionment formula under WIS. ADM. CODE § TAX 2.46, as applied to UPSCO, is unconstitutional.

UPSCO argues that because it conducts business in all fifty states, the percentage of income apportioned to any one particular state is low. Consequently, a small numerical increase in its apportionment percentage has a large effect on its taxable income. UPSCO points out that the increase of 1.5 percent in the percentage of income attributable to Wisconsin resulted in an increase in the amount of its income apportioned to Wisconsin of 110 percent for 1985 and 76 percent for 1986. UPSCO contends that a comparison should be made between the income attributed to the state by the disputed formula and by the taxpayer's alternative, not between the percentage of the taxpayer's total income attributed by the two formulas. While other jurisdictions follow the approach proposed by UPSCO, *see, e.g., Gen. Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 868-69 (Tex. Ct. App. 1996), we conclude that we should follow

the analysis set out by our own supreme court in *Consolidated Freightways*. The taxpayer in *Consolidated Freightways* also conducted business in all fifty states and the court nonetheless applied a percentage-increase analysis.

UPSCO relies on *W.R. Arthur & Co. v. Dep't of Taxation*, 18 Wis. 2d 225, 118 N.W.2d 168 (1962), *cert. denied*, 374 U.S. 94 (1963), for the proposition that we must look at the arrivals and departures factor in isolation and determine whether that factor bears a reasonable relationship to its Wisconsin income. In UPSCO's view, this determination must be made in addition to examining whether the formula as a whole produces a fair apportionment.

W.R. Arthur was an interstate trucking company, organized under Illinois law with its corporate offices in Janesville, Wisconsin. Its principal activity was the delivery of automobiles manufactured in Janesville to dealerships in eleven states, including Wisconsin. It served only one client, the General Motors Corporation. W.R. Arthur challenged the Department's apportionment formula which consisted of three factors: revenue miles, payroll and originating revenue. Specifically, W.R. Arthur argued that the originating revenue factor was arbitrary and improper because, as *all* of its carriage was outbound, the originating revenue factor equaled its gross receipts and the formula therefore taxed services performed by the taxpayer outside of the state. The taxpayer did not challenge the other factors used in the formula.

The *W.R. Arthur* court stated that "[w]hen a multifactor formula is used, each factor must bear a reasonable relationship to the taxpayer's business and to the other factors of the formula; it must also produce a fair apportionment when set in combination with

other germane factors. The test is not whether, standing alone, a given factor produces a fair apportionment." *W.R. Arthur*, 18 Wis. 2d at 232, 118 N.W.2d at 171. The court concluded that including 100 percent of gross receipts as one factor in a three-factor formula constituted a reasonable means of reflecting the company's income attributable to Wisconsin. The formula took into account the "peculiar nature of [the taxpayer's] business activity" and the fact that the taxpayer's one and only customer was in Wisconsin and the taxpayer was headquartered in Wisconsin. The court then stated:

> If used as a single factor, gross receipts would result in all of the taxpayer's income being taxed here, and this would obviously constitute an unfair tax. However, when it is used in conjunction with the two other factors, it cannot be said to be arbitrary or to result in an unfair apportionment.

*W.R. Arthur*, 18 Wis. 2d at 231, 118 N.W.2d at 171.

In the court of appeals' opinion in *Consolidated Freightways Corp. v. DOR*, 157 Wis. 2d 65, 458 N.W.2d 550 (Ct. App. 1990), *rev'd*, 164 Wis. 2d 764, 477 N.W.2d 44 (1991), we looked, as the court did in *W.R. Arthur*, at whether the single challenged factor (originating revenue) bore a reasonable relationship to the taxpayer's business. We first stated that, unlike the taxpayer in *W.R. Arthur*, whose only customer, management staff, employees and offices were located in Wisconsin, Consolidated Freightways was not headquartered in Wisconsin and only 13 of its 410 terminals were located in Wisconsin. We next explained that the use of the outbound revenue factor exaggerated Consolidated Freightways' Wisconsin income because it assumed that outbound and inbound revenues were equal indicators of activity within the state, when in fact the

evidence established that carriers were more heavily laden going out of Wisconsin than coming in, and that freight revenues were higher outbound. We also stated that because the originating revenue factor attributed the entire journey to Wisconsin, it measured Wisconsin income by activity in other states. *Id.* at 74-75, 458 N.W.2d at 554-55. We therefore concluded that the apportionment formula, as applied to Consolidated Freightways, violated § 71.07(2), STATS., 1985-86, by taxing extraterritorial income. We did not look at the validity of the apportionment formula as a whole.

However, in reversing our opinion in *Consolidated Freightways*, the supreme court did not follow our analysis. The court did not examine whether the single challenged factor bore a reasonable relationship to the taxpayer's business. Rather, the court looked at whether the overall apportionment formula produced a fair apportionment. Following *Consolidated Freightways*, the focus of inquiry is on the apportionment formula as a whole, not on a single factor.

Moreover, even if the arrivals and departures factor were looked at in isolation, we would conclude it bears a reasonable relationship to the taxpayer's business. UPSCO is in the business of providing an air transportation service for small packages. UPSCO's activities in Wisconsin consist of flying into and out of the state. Whether weighted or not, these activities produce income for UPSCO. While a weighted factor might produce a more precise representation of UPSCO's income-generating activities in Wisconsin, this does not mean that the unweighted factor is not reasonably related to UPSCO's business activities in Wisconsin.

79

## SECTION 71.07(3) AND (5), Stats., 1985-86

UPSCO contends the Department erroneously refused to grant it relief under § 71.07(3) and (5), Stats., 1985-86, which, it argues, permits the Department to depart from standard methods of apportionment where such methods would produce an unfair or inequitable result. We disagree.

Section 71.07(3), Stats., 1985-86, provides in part:

> Where, in the case of any corporation, nonresident individual or nonresident estate or trust engaged in business within and without the state of Wisconsin and required to apportion its income as herein provided, it shall be shown to the satisfaction of the department of revenue, that the use of any one of the 3 ratios above provided for gives an unreasonable or inequitable final average ratio .... the factors made use of in obtaining such ratio may, with the approval of the department of revenue, be omitted in obtaining the final average ratio which is to be applied to the remaining net income.

This provision does not apply to UPSCO. By its plain terms, it applies only to the apportionment formula that is applied to corporations, nonresident individuals and nonresident estates and trusts. That formula is set out in § 71.07(2)(a)-(cr), Stats., 1985-86. The apportionment of financial organizations and public utilities, such as UPSCO, is separately provided for in § 71.07(2)(e), Stats., 1985-86, and Wis. Adm. Code § Tax 2.46.

For the same reason, § 71.07(5), Stats., 1985-86, also does not apply. That section provides an alternative method of apportionment, but only for corporations, nonresident individuals and nonresident estates and trusts.

80

UPSCO asks this court to interpret WIS. ADM. CODE § TAX 2.46(1) as providing for a weighted arrivals and departures factor. However, the rule plainly provides that the factor consists of "aircraft arrivals and departures." There is no suggestion in the rule that the arrivals and departures should be weighted. While a weighted factor may be more accurate, it is up to the Department, not this court, to change its rule.

*By the Court.*—Order affirmed.